AMR A. SHABAIK, ESQ. (SBN 288109)
    ashabaik@cair.com
DINA CHEHATA, ESQ. (SBN 295596)
    dchehata@cair.com
**COUNCIL ON AMERICAN-ISLAMIC RELATIONS-CA**
2180 West Crescent Ave., Ste. F
Anaheim, California 92801
Tel. (714) 776-1177 | Fax (714) 776-8340

LENA F. MASRI, ESQ. (DC # 1000019) (*pro hac* forthcoming)
    lmasri@cair.com
GADEIR I. ABBAS, ESQ. (VA # 81161) (*pro hac* forthcoming) α
    gabbas@cair.com
**CAIR NATIONAL LEGAL DEFENSE FUND**
453 New Jersey Ave., SE
Washington, DC 20003
Tel. (202) 742-6420 | Fax (202) 379-3317

α Licensed in VA, not D.C. Practice limited to federal matters.

Attorneys for Plaintiff,
Nusaiba Mubarak

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUSAIBA MUBARAK,<br><br>*Plaintiff*,<br><br>vs.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT CHIEF MICHEL R. MOORE in his official capacity, only; COREY HARMON, in his individual capacity, only; LAPD OFFICERS #1-4 in their individual capacities, only.<br><br>*Defendants.* | Case No.: 2:20-cv-8524<br><br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND SUPPLEMENTAL STATE-LAW CLAIMS**<br><br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff NUSAIBA MUBARAK, by and through her attorneys, Council on American-Islamic Relations – CA and CAIR National Legal Defense Fund, alleges as follows:

**INTRODUCTION**

1.     Last September, at a public hearing addressing a Los Angeles Police Department ("LAPD") officer's shooting and killing of Albert Ramon Dorsey, other LAPD officers illegally handcuffed Nusaiba Mubarak and forcibly removed her *hijab*.

2.     Ms. Mubarak was set to address the Los Angeles Board of Police Commissioners during a public meeting convened to pass judgment on whether the officer who shot and killed Albert Dorsey violated department policy.

3.     While in line to give a public comment, Ms. Mubarak was handcuffed and whisked out of the hearing, which prevented her from speaking out against the killing that day.

4.     Instead, Ms. Mubarak herself became a target of LAPD officers who casually and without cause stripped her of her *hijab*, leaving her uncovered for several minutes in the presence of at least one male officer.

5.     This terrifying encounter—excessive, unnecessary, and in violation of Ms. Mubarak's rights—was unsubstantiated.  She was not taken into custody, she was not charged with a crime, and perhaps realizing their transgressions, Ms. Mubarak was let go by the LAPD.

6.     Ms. Mubarak brings claims against five officers—one named and the other four having identities unknown to her.  She brings these claims to challenge illegal LAPD behavior that callously humiliated her, stripped her of a religious garment in front of others, and erased her chance to address the public body that oversees the very officers who violated her rights.

**VENUE AND JURISDICTION**

7.     This action arises under 42 U.S.C. § 1983, the laws and Constitution of the

2

United States, and the laws and Constitution of the State of California.

8.     This Court has original federal question jurisdiction over Plaintiff's claims of violations of the First and Fourth Amendments to the United States Constitution pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 1983.

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1343 over Plaintiff's claims regarding the deprivation under color of State law of rights secured by the First and Fourth Amendments to the Constitution of the United States and the laws of the United States.

10.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by California Civil Code § 52.1, and by the general, legal, and equitable powers of this Court.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of California.

13.     Venue is proper under 28 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the State of California and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

14.     Plaintiff's federal claims for attorney's fees and costs are predicated upon 42 U.S.C. §§ 1988, which authorizes the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983.

15.     Plaintiff's state claims for attorney's fees and costs are predicated upon California Civil Code § 52.1, which authorizes the award of attorney's fees and costs to prevailing parties.

## **PARTIES**

16.     Plaintiff Nusaiba Mubarak is a Muslim American woman that, at all times

relevant to this complaint, resided in Los Angeles County, California.

17.     Defendant City of Los Angeles is a chartered municipal corporation duly organized and existing under the laws and Constitution of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. The City of Los Angeles acted through Defendant Michel R. Moore ("Moore"), the Police Chief of the LAPD, Defendant Harmon, Defendants LAPD Officers #1-4 and its agents, employees, and servants.

18.     At all relevant times, Defendant City of Los Angeles possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of the LAPD, including those individual officers of the LAPD charged with operating and overseeing the search, seizure, detention, and arrests at the City's police facilities.  At all relevant times the City of Los Angeles was the employer of Defendant Chief Michel Moore, Defendant Harmon, and Defendants LAPD Officers #1-4.  The City of Los Angeles is sued in its own right on the basis of its policies, customs and practices which give rise to Plaintiff's claims.

19.     Defendant Chief Michel Moore is and was at all relevant times to this action, the LAPD police chief and a policymaker for his department.  At all relevant times, Defendant Moore possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of the LAPD, including those individual officers of the LAPD charged with operating and overseeing the search, seizure, detention, and arrests at the City's police facilities. Defendant Chief Michel Moore is being sued in his official capacity, only.

20.     Defendant Corey Harmon is an LAPD police detective (Badge No. 36856). Defendant Harmon is charged with protecting the Constitutional rights of detainees and arrestees in his custody and control and assuring that his actions comply with applicable

policies, rules, regulations, customs, practices and procedures of the LAPD in addition to local, state and federal laws.  Defendant Harmon deprived Ms. Mubarak of her First and Fourth Amendment rights while she was in his custody and control.  Defendant Harmon is being sued in his individual capacity, only.

21.     Defendants LAPD Officers #1-4 are LAPD police officers.  Defendants LAPD Officers #1-4 are charged with protecting the Constitutional rights of detainees and arrestees in their custody and control and assuring that their actions comply with applicable policies, rules, regulations, customs, practices and procedures of the LAPD in addition to local, state and federal laws.  Defendants LAPD Officers #1-4 deprived Ms. Mubarak of her First and Fourth Amendment rights while she was in their custody and control.  Defendants LAPD Officers #1-4 are being sued in their individual capacities, only.

22.     The true names of Defendants LAPD Officers #1-4 are presently unknown to Plaintiff, who therefore sues each of these Defendants by fictitious names.  Upon ascertaining the true identity of an LAPD Officer, Plaintiff will amend this Complaint or seek leave to do so by inserting the true and correct name in lieu of the fictitious name. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that each Defendant LAPD Officer herein is in some manner responsible for the injuries and damages alleged herein. LAPD Officers #1-4 acted under color of law and within the scope of his or her agency and employment with the City of Los Angeles as a police officer, sergeant, detective, captain, lieutenant, commander, supervisor, and/or civilian employee, and agent, policy maker, and representative of the City. Each LAPD Officer is sued in his/her individual capacity, only.

23.     At all relevant times, City of Los Angeles was the employer of each of the individually named Defendants and individually unnamed LAPD Officer Defendants. The Los Angeles Police Department Headquarters where Ms. Mubarak was illegally handcuffed and searched was run by the City of Los Angeles.  On information and

belief, the LAPD receives federal financial assistance as well as financial assistance from the State of California.

## EXHAUSTION

24.     On or around March 6, 2020, pursuant to California Government Code § 910 and within the statutory time period, Plaintiff presented to Defendant City of Los Angeles a claim for damages arising from the September 17, 2019 violations of Plaintiff's rights.

25.     Defendant City of Los Angeles acknowledged receipt of the claim and assigned Plaintiff's claim a number – C20-04659.

26.     On March 24, 2020, Defendant City of Los Angeles issued a response, denying Plaintiff's claim.  Because Defendant City of Los Angeles denied Plaintiff's claim, Plaintiff exhausted the administrative process.

27.     Having presented the claim on or around March 6, 2020 and received notice of the claim's denial on March 24, 2020, this action was timely filed.

## FACTS PERTINENT TO ALL CAUSES OF ACTION

28.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 27 of this Complaint with the same force and effect as if fully set forth herein.

29.     Ms. Mubarak is a Muslim woman.  In accordance with her religious beliefs and as a part of the exercise of her religion, Ms. Mubarak wears a religious headscarf known as the *hijab*, an obligatory religious covering for the sake of dignity, modesty, and bodily integrity.

30.     Many Muslim women wear the *hijab* in accordance with their religious beliefs and practices, as derived from the Qur'an, the Islamic holy book, and the oral traditions of the Prophet Muhammad, also known as *ahadith*.  The word *hijab* comes from the Arabic word "hajaba," which means to hide or screen from view or to cover.  Ms. Mubarak, like other Muslim women, believe the *hijab* is obligatory religious attire

that must be worn in the presence of males who are not their immediate relations or spouses.

31.     As part of her sincerely held religious beliefs and practices, Nusaiba Mubarak wears the *hijab*, which covers her hair, ears, and neck area when she is in public or in the presence of males who are not her immediate relation or spouse.  Ms. Mubarak considers the removal of her *hijab* without her consent and outside the prescriptions of her faith to be a serious breach of her religious beliefs.

32.     On September 17, 2019, Ms. Mubarak attended a police commission meeting at the Los Angeles Police Department Headquarters at 100 West 1st Street, Los Angeles, CA 90012.  The meeting was convened to discuss an LAPD officer fatally shooting Albert Ramon Dorsey on October 29, 2018 at a 24-Hour Fitness Gym in Hollywood, California.

33.     Before the hearing began, Ms. Mubarak sought entry to the Los Angeles Police Department Headquarters.  Prior to being allowed into the hearing, Ms. Mubarak was searched for weapons and prohibited items. She was screened by a metal detector and her belongings were also searched.

34.     Alongside Ms. Mubarak, other members of the public attended the police commission meeting to provide their comments, including family members of Albert Ramon Dorsey.

35.     As Ms. Mubarak stood in line at the meeting to provide a public comment, an activist spoke to the Police Board of Commissioners.  He talked about how the killing "hit real close to home" because he, like Albert Ramon Dorsey, had recently moved to the area.

36.     The activist stated: "You don't move across the country [] and have a death wish…you move across the country because you have dreams, you have goals, you have plans, you're trying to build something, you're trying to create something, you're trying to accomplish something."  He decried Mr. Dorsey's killing and other instances of police violence.

7

37.    As the activist was concluding his remarks, a commissioner accused him of exceeding his time and demanded he leave the meeting.  Though the activist soon stopped speaking and returned to his seat, LAPD officers moved towards him in order to forcefully expel him from the room.

38.    At the time, Plaintiff was standing in a multiple-persons-wide walkway perpendicular to the aisles where the prior speaker —as well as Mr. Dorsey's family and other supporters—were seated.  There were multiple routes to the aisle, and Ms. Mubarak—who, in accordance with the instructions of the Police Board of Commissioners, was lined up in the walkway to make a public comment—was not making it impossible for any officer to enter the aisle if they chose to do so.

39.    LAPD Detective Corey Harmon walked towards the aisle where the activist was seated and stood face to face with Ms. Mubarak.  He stated: "You're in the way."

40.    Ms. Mubarak began to tell Defendant Corey Harmon that she was not in the way, but Defendant Harmon immediately grabbed her before she could finish her sentence, and with the assistance of Defendant LAPD Officer #1 and Defendant LAPD Officer #2, pulled her arms behind her back and handcuffed her wrists together.

41.    While handcuffed, Ms. Mubarak was led into an adjacent room connected to the police commission meeting room.

42.    Defendant Harmon left Ms. Mubarak with Defendant female LAPD Officer #3 and Defendant male LAPD Officer #4. Defendant Harmon provided no information to Defendant LAPD Officer #3 or Defendant LAPD Officer #4 regarding why he handcuffed Ms. Mubarak or what he wanted the officers to do with her.

43.    Defendant LAPD Officer #3 then subjected Ms. Mubarak to an intrusive physical search while she remained handcuffed, comprising her entire body.  The search was conducted in full view of Defendant Officer #4.

44.    While Defendant LAPD Officer #3 physically conducted the search, Defendant LAPD Officer #4, —per LAPD policy and custom—played a role in the

search by monitoring it.  Accordingly, LAPD Officer #4 monitored the entire search from beginning to end.

45.     Though Defendant LAPD Officer #3 and Defendant LAPD Officer #4 searched Ms. Mubarak, they did not know why they were searching her or why Defendant Harmon handcuffed her and brought Ms. Mubarak to them.

46.     During the search, Defendant LAPD Officer #3 grabbed Ms. Mubarak's *hijab* and forcibly removed it without her consent, while she remained handcuffed and incapacitated.

47.     Ms. Mubarak immediately protested against the removal of her hijab and informed Defendant LAPD Officer #3 that she was wearing the headscarf for religious purposes and that it should not have been removed.  Ms. Mubarak requested that Defendant LAPD Officer #3 replace her headscarf, to which LAPD Officer #3 dismissively replied, "Just wait a minute."

48.     When Defendant LAPD Officer #3 removed Ms. Mubarak's *hijab,* she felt humiliated.  She came to the public hearing to speak out against police misconduct but was instead illegally stripped of a religious article of clothing Ms. Mubarak always wears in public as a mandatory expression of her faith.  For Ms. Mubarak, Defendant LAPD Officer #3's decision to rip off her hijab inflicted a degrading indignity she will remember for the rest of her life.

49.     Despite Ms. Mubarak's urgent plea for her *hijab* to be immediately replaced, Defendant LAPD Officer #3 failed to do so and instead proceeded to fill out paperwork.  During this time, Ms. Mubarak remained handcuffed and without her *hijab* in the presence of Defendant LAPD Officer #4.

50.     After completing her search and paperwork, LAPD Officer #3 replaced Ms. Mubarak's hijab.

51.     Soon after being searched, Ms. Mubarak was permitted to take a seat. While she was seated, Defendant LAPD Officer #3 and Defendant LAPD Officer #4 asked one another why Ms. Mubarak was there and why Defendant Harmon handcuffed

Ms. Mubarak and brought her to Defendant LAPD Officer #3 and Defendant LAPD Officer #4.

52.     Ms. Mubarak proceeded to ask LAPD Officer #3 and LAPD Officer #4 why she was handcuffed, whether she was free to leave, and why she was being held in that room.  In response, Defendant LAPD Officer #3 and LAPD Officer #4 responded that they did not know and were waiting for additional information.

53.     LAPD Officer #3 and LAPD Officer #4 did not have a reason themselves to keep Ms. Mubarak in their custody against her will and conducted an illegal search of Ms. Mubarak without a rationale and solely because Defendant Harmon delivered Ms. Mubarak to them.

54.     As she was seated, Defendant LAPD Officer #4 noted Ms. Mubarak's discomfort due to the handcuffs and told her he would take off her handcuffs, "if she was good."  He subsequently removed her handcuffs.

55.     After approximately 30 minutes, Defendants allowed Ms. Mubarak to leave.  Since then, she has not been charged with a crime of any kind regarding her attendance at the September 17, 2019 police commission hearing.

56.     Despite Ms. Mubarak's protestation that she was wearing the hijab for religious purposes and that it should not have been removed, and despite her pleas for the return of her hijab, neither Defendant LAPD Officer #3 nor Defendant LAPD Officer #4 took any steps to abort the search of her person while she was not wearing the hijab.  They took no steps to immediately return her hijab to her or to ensure that Ms. Mubarak was not searched in front of an LAPD officer of the opposite gender.

57.     At no time did Defendant LAPD Officer #4, whose duty it was to monitor the search, take any steps to prevent or protest against Defendant LAPD Officer #3's removal of Ms. Mubarak's hijab.

58.     At no time did Defendant LAPD Officer #4 leave the room to ensure that neither he nor other male officers were present during the search of Ms. Mubarak while her hijab was removed, nor did he request a female officer to monitor the search

10

instead.

59.     At no time did Defendants Harmon and LAPD Officers #1-4 ensure that Ms. Mubarak was searched in front of LAPD officers of the same gender.

60.     At no time did Defendants Harmon and LAPD Officers #1-4 ensure that Ms. Mubarak was searched in a manner that does not violate her sincerely held religious beliefs.

61.     At no time was Defendant LAPD Officer #3 reprimanded or ordered by another LAPD officer to return Ms. Mubarak's hijab to her.

62.     Upon information and belief, Defendants Harmon and LAPD Officers #1-4 acted in concert with one another to violate Ms. Mubarak's sincerely held religious beliefs by removing her hijab and conducting a search of her person in front of an LAPD officer of the opposite gender.

63.     Upon information and belief, Defendants Harmon and LAPD Officers #1-4 violated Ms. Mubarak's sincerely held religious beliefs by removing her hijab and conducting a search of her person in front of an LAPD officer of the opposite gender in accordance with LAPD custom, practice, policies and/or procedures.

## DEFENDANTS' CULPABILITY AS TO *HIJAB*-BASED CLAIMS

64.     On information and belief, Defendants City of Los Angeles, the LAPD, Moore, and Does 1 through 10, its employees and agents, forced Ms. Mubarak to remove her religious head covering pursuant to a custom, practice, or official policy that permits LAPD officers and officials to strip the religious coverings of detainees. The City does not have a policy that sets forth the circumstances in which detainees are permitted to wear items to cover themselves for religious purposes. The lack of written policy to protect detainees' religious freedom to wear religious coverings is itself a policy and/or custom, which permits LAPD officers to remove and violate religious coverings with impunity.

65.     Defendants City of Los Angeles, the LAPD, Moore, and Does 1 through 10, its employees and agents, caused the forcible removal of Ms. Mubarak's hijab, and thereafter prohibited her from wearing her religious covering pursuant to a custom, practice, or official policy promulgated and implemented by the City of Los Angeles, the LAPD, Moore, and Does 1 through 10, which was ratified by the City of Los Angeles or which the City of Los Angeles failed to address.

66.     As the entity defendants have no written policy forbidding its employees from removing detainees' religious coverings or describing the certain scenarios when detainees would be permitted to wear religious headwear and other clothing, and since entity defendants, Moore, and supervisory officers (certain Doe defendants) have not trained LAPD officers to permit detainees to wear religious coverings while in custody, LAPD officers have filled this vacuum of a lack of training with a custom and practice of removing the religious coverings of detainees, without any valid security concerns and in violation of their religious beliefs and constitutionally held rights.

67.     In contrast to the LAPD policy, custom, or practice of effectively forcing Muslim women to remove their religious coverings while in detention, the Federal Bureau of Prisons ("BOP") has enacted a policy accommodating "religious headwear" providing that "[s]carves and head-wraps (*hijab*s) are appropriate for female inmates." *See* U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004).[1] The federal policy authorizes female Muslim inmates to wear a "*hijab*," and it states that such "[r]eligious headwear is worn throughout the institution." *Id.* The policy is intended to protect "the religious rights of inmates of all faiths" while maintaining "the security and orderly running of the institution." *Id.*

68.     The United States Department of State permits individuals to maintain their religious headwear in official passport photographs. According to the Department

---

[1] http://www.bop.gov/policy/progstat/5360_009.pdf

of State website, this accommodation should be granted to individuals who "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn in public."[2]

69.    As of 2012, the U.S. Citizenship and Immigration Services ("USCIS") permits religious headwear to be worn in photographs. Specifically, "USCIS will accommodate an individual who wears headwear as part of their religious practices."[3] If the headwear casts a shadow over the individual's face making identification impossible, USCIS will "ask an individual to remove or adjust portions of religious headwear that covers all or part of the individual's face." *Id.*  If the individual is asked to remove all or part of their religious headwear, USCIS will offer a private room or screened area and a same gender photographer. *Id.* If USCIS is unable to accommodate with a private room and same gender photographer, USCIS will offer to reschedule the appointment until an accommodation can be made. *Id.*

70.    Like the BOP, State Department, and USCIS, other states have enacted policies accommodating religious headwear. For example, the Kentucky Department of Corrections permits "[s]carves and head wraps to be authorized for female inmates who have identified a religious preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition." This includes the *hijab*. *See* Kentucky Corrections, Policies and Procedures, Policy No. 23.1, at 5 (filed Jan. 9, 2007). Similarly, the New York Department of Correctional Services permits inmates to wear religious headwear. *See* State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015).

71.    In contrast to the City's policy, custom, or practice violating religious headwear, the Orange County Sheriff's Department, as of 2013, does not require

---

[2] https://ru.usembassy.gov/u-s-citizen-services/passports/photos
[3] https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2012/August%202012/Accommodating%20Religious%20Beliefs%20PM.pdf

Muslim women in custody to remove their headscarves in front of male officers, and provides temporary headscarves. This occurred following a suit by a Muslim woman placed in North County Justice Center for several hours after being forced to remove her headscarf.[4]

72.     Additionally, after a 2016 lawsuit by a Muslim woman whose *hijab* was removed while in custody overnight, the Long Beach Police Department has adopted procedures permitting female arrestees and inmates to maintain their *hijab* at all times while in custody.[5]

73.     These examples show a growing national consensus that there is no basis to require the removal of religious headwear while in detention or custody.  Moreover, similar other institutions and departments have recognized the sanctity of a headscarf when it is worn as a religious article of clothing, which should be properly accommodated.

74.     The entity defendants, Moore, Los Angeles City employees and agents, and Doe defendants, forcefully removed Plaintiff's religious headscarf without her consent and without a valid security concern, thereby exposing her to strange men, violating her right to the free exercise of her religion, violating her rights under federal law, and violating her right under the California Constitution and laws, causing Plaintiff extreme mental and emotional distress.

75.     The entity defendants, Moore, Los Angeles City employees and agents, and Doe defendants, subjected Plaintiff to an unreasonable search and seizure, although she was not armed or dangerous and although she was not engaging in criminal activity, violating her rights under the United States Constitution and causing Plaintiff extreme mental and emotional distress.

76.     On the September 17, 2019, the day on which Plaintiff was arrested and

---

4 http://www.ocregister.com/articles/religious-495992-county-court.html
5 www.presstelegram.com/2016/12/25/long-beach-police-change-policy-will-allow-muslim-women-to-wear-headscarves-while-in-custody/

detained, Defendant Moore managed and supervised the LAPD and all officers working therein, including Does 1-10, who had contact with the Plaintiff and participated in the events that form the basis of this Complaint.

77.     On information and belief, Defendants Does 1-10 and Moore, were aware or should have been aware that officers, including Does 1-10, engaged in the practice of removing religious head coverings, like the *hijab*, and that such removal and deprivation would violate Plaintiff's right to free exercise of religion, as well as rights under federal and state law, and cause Plaintiff extreme mental and emotional distress.

78.     On information and belief, Defendant Moore and the City failed to prevent officers, including Does 1-10, from depriving Ms. Mubarak of her religious headscarf, either by training those officers, exercising their control over those officers, adequately supervising those officers, or redressing those officers' conduct.

79.     Defendants knew or should have known their actions were unlawful and in violation of clearly established law prohibiting Defendants from imposing a substantial burden on the free exercise of religion in the absence of a compelling government interest.

80.     On information and belief, Defendant Moore and the City failed to prevent officers, including Does 1-10, from conducting an unlawful search and seizure of Ms. Mubarak, either by training those officers, exercising their control over those officers, adequately supervising those officers, or redressing those officers' conduct.

81.     Defendants knew or should have known that their unreasonable search and seizure of Plaintiff violated clearly established law prohibiting Defendants from unlawfully depriving Plaintiff of her right to be secure in her person and effects against unreasonable searches and seizures.

82.     By failing to properly train, control, and supervise its officers, and by failing to implement a policy safeguarding the religious rights of detainees and arrestees, Defendants Moore and City of Los Angeles demonstrated a reckless indifference to Plaintiff's constitutional rights.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – Violation of the Fourth Amendment**

(Against All Defendants)

83.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

84.    At all relevant times, Plaintiff was in the custody of the Defendants and was detained by Defendants Harmon and LAPD Officers #1-4, acting under color of state law. At all relevant times Plaintiff was under the direct supervision and control of Defendants Harmon and LAPD Officers #1-4.

85.    The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Courts have repeatedly emphasized the sanctity of every individual's right "to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."   U.S. Const. amend. IV. The Fourth Amendment applies to the state of California through the 14th Amendment. U.S. Const. amend. XIV, §1.

86.    In the event that, on September 17, 2019, Defendants Harmon and LAPD Officers #1-4 handcuffed Plaintiff during a *Terry* stop under *Terry v. Ohio* (1968) 392 U.S. 1, the stop violated clearly established law as excessive and unreasonable given (1) the amount of force used, (2) the use of handcuffs, (3) the removal of an article of Plaintiff's clothing, (4) the search of Plaintiff's person underneath her clothing, and (5) the length of time the detention took.

87.    In the event that, on September 17, 2019, Defendants Harmon and LAPD Officers #1-4 handcuffed Plaintiff during a *Terry* stop, it violated clearly established law because there was no reasonable suspicion that Plaintiff had committed any criminal act or that Plaintiff was armed and dangerous.

88.    In the event that, on September 17, 2019, Defendants Harmon and LAPD

16

Officers #1-4 handcuffed Plaintiff during a *Terry* stop, it violated clearly established law because there was no reasonable suspicion that Plaintiff had committed any criminal act or that Plaintiff was armed and dangerous.

89.    In the event that, on September 17, 2019, Defendants Harmon and LAPD Officers #1-4 arrested Plaintiff, they violated clearly established law because there was no probable cause to believe Plaintiff had committed any criminal act. Plaintiff was standing in a walkway in accordance with the Police Board of Commissioners' instructions and at no time made it impossible for any officer from moving or otherwise performing their duties.  Even if there was probable cause for arrest, there was no justification for excusing the requirement of a warrant because to the extent that, on September 17, 2019, Defendants Harmon and LAPD Officers #1-4 did not process Plaintiff for arrest nor transport her to a facility booking, and further in-facility detention.

90.    In the event that Defendants Harmon and LAPD Officers #1-4 were committing a search under the Fourth Amendment, it violated clearly established law because there was no probable cause to believe Plaintiff was in possession of any evidence material to a criminal act. Even if there were, there was no justification for excusing the requirement of a warrant.

91.    In fact, the actions of Defendants Harmon and LAPD Officers #1-4 were committed in bad faith to punish Plaintiff for her constitutionally protected religious beliefs and for her participation in constitutionally protected speech.

92.    As a direct and proximate result of the Defendants' acts, omissions, customs, practices, policies and decisions, Plaintiff was deprived of her rights under the Fourth Amendment to be secure in her person against unreasonable searches and seizures.  Defendants humiliated Plaintiff, inflicting a degrading indignity she will remember for the rest of her life and causing injury as alleged above, entitling her to recover compensatory and punitive damages.

93.    Defendants City of Los Angeles and Moore maintained or tolerated

17

unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiff's rights under the Fourth Amendments, as alleged above.

94.     With deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional rights of Plaintiff, Defendants City of Los Angeles and Moore maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs: (a) failing to adequately train, supervise, and control officers in properly permitting arrestees, detainees and incarcerees to maintain religious practices; (b) failing to establish policies and procedures to permit arrestees, detainees and incarcerees to maintain religious practices, such as wearing religious head coverings including but not limited to Plaintiff's *hijab*; (c) failing to adequately train, supervise, and control officers in the proper manner to remove religious headwear worn by arrestees, detainees and incarcerees; (d) failing to establish policies and procedures to protect arrestees, detainees and incarcerees from being stripped of their religious rights; (e) failing to adequately train, supervise, and control officers from properly preventing male officers and individuals from viewing female arrestees, detainees and incarcerees who are uncovered, in violation of sincerely held religious beliefs.

95.     The policies, customs, and practices described above are evidenced by the treatment of Plaintiff by LAPD officers, namely, that Defendants City of Los Angeles and Moore's agents: (a) forcibly removed Plaintiff's obligatory religious headscarf without her consent; (b) forced Plaintiff to appear in front of men who were not immediately related or married to her without her *hijab;* and (c) denied Plaintiff's request to replace her headscarf despite Plaintiff notifying them of its religious significance. The above actions are evidence of Defendants City of Los Angeles and Moore's systematic failure to comply with their constitutional obligations.

96.     Defendants City of Los Angeles and Moore had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. They acted with deliberate indifference to the foreseeable effects and

consequences of these policies, practices, and customs or omissions thereof with respect to the constitutional rights of Plaintiff and other female arrestees and detainees similarly situated.

97. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned Defendants, Plaintiff was injured and sustained damages as alleged above. Defendants' actions humiliated Plaintiff and inflicted a degrading indignity she will remember for the rest of her life. In the alternative, Defendants illegal arrest humiliated Plaintiff and inflicted a degrading indignity she will remember for the rest of her life.  Accordingly, Plaintiff seeks damages, including but not limited to punitive damages, from Defendants.

98. WHEREFORE, Plaintiff requests this Court grant injunctive and declaratory relief in the form requested in the Prayer for Relief below, and further grant nominal, compensatory and punitive damages, in addition costs, attorneys' fees and all such other relief this Honorable Court deems just and equitable.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 - Violation of the First Amendment's Free Exercise Clause

(Against All Defendants)

99. Plaintiff incorporates by reference the above paragraphs and allegations as though fully set forth herein.

100. At all relevant times, Plaintiff was in the custody of Defendants City of Los Angeles and LAPD and was detained by Defendants Harmon and LAPD Officers #1-4, acting under color of state law. At all relevant times Plaintiff was under the direct supervision and control of Defendants Harmon and LAPD Officers #1-4.

101. 42 U.S.C. §1983 provides in part that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

102.   The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…"  U.S. Const. amend. I.  The First Amendment applies to the state of California through the 14th Amendment.  U.S. Const. amend. XIV, §1.

103.   Defendants deprived Plaintiff of her civil rights under the First Amendment by forcibly removing her headscarf without her permission in public refusing to return it even after establishing it did not conceal any prohibited items or weapons.

104.   Defendants cannot demonstrate that there is a valid, rational connection between the complete removal of Plaintiff's headscarf and a legitimate governmental interest.  Plaintiff had already been searched prior to entering the facility where the incident unfolded on September 17, 2019.  Defendants had numerous available alternative options that would have accommodated Plaintiff's rights without interfering with any law enforcement interests.  Defendants could have but did not pat down the outside of Plaintiff's *hijab* and they could have but did not search under the lining of the headscarf without removing it.  Defendants could have but did not take Plaintiff to be searched by female officers alone out of view from others.

105.   Defendants decision to remove Plaintiff's *hijab* was neither neutral nor generally applicable because it was a decision to remove an article of clothing— contrary to state and federal law—with religious significance for Plaintiff and other Muslim women.

106.   Defendants' conduct was not in furtherance of a compelling government interest, given that Plaintiff was previously searched and found free of any weapons or prohibited items.  Neither was Defendants' conduct the least restrictive means of furthering that compelling government interest.

20

107.   The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary, and oppressive, and unrelated to any activity that governmental officers may appropriately and legally undertake in the course of protecting persons or ensuring order. The above acts and omissions were consciously chosen from among various alternatives.

108.   Defendants City of Los Angeles and Moore maintained or tolerated unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiff's rights under the Fourth Amendments, as alleged above.

109.   With deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional rights of Plaintiff, Defendants City of Los Angeles and Moore maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs: (a) failing to adequately train, supervise, and control officers in properly permitting arrestees, detainees and incarcerees to maintain religious practices; (b) failing to establish policies and procedures to permit arrestees, detainees and incarcerees to maintain religious practices, such as wearing religious head coverings including but not limited to Plaintiff's hijab; (c) failing to adequately train, supervise, and control officers in the proper manner regarding the removal of religious headwear worn by arrestees, detainees and incarcerees; (d) failing to establish policies and procedures to protect arrestees, detainees and incarcerees from being stripped of their religious rights; (e) failing to adequately train, supervise, and control officers from properly preventing male officers and individuals from viewing female arrestees, detainees and incarcerees who are uncovered, in violation of sincerely held religious beliefs.

110.   The policies, customs, and practices described above are evidenced by the treatment of Plaintiff by Defendants Harmon and LAPD Officers #1-4, namely, that Defendants City of Los Angeles and Moore's agents: (a) forcibly removed Plaintiff's

obligatory religious headscarf; (b) forced Plaintiff to appear in front of men who were not immediately related or married to her without her hijab; and (c) denied Plaintiff's request to replace her headscarf despite Plaintiff notifying them of its religious significance and pleading for it to be given back so that she could wear it. The above actions are evidence of Defendants City of Los Angeles and Moore's systematic failure to comply with their constitutional obligations.

111.    Defendants City of Los Angeles and Moore had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. They acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, and customs or omissions thereof with respect to the constitutional rights of Plaintiff and other female arrestees and detainees similarly situated.

112.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned Defendants, Plaintiff was injured and sustained damages as alleged above. Defendants' illegally conducted a Terry stop search, humiliated Plaintiff and inflicted a degrading indignity she will remember for the rest of her life.  In the alternative, Defendants illegal arrest humiliated Plaintiff and inflicted a degrading indignity she will remember for the rest of her life. Accordingly, Plaintiff seeks damages from Defendants.

113.    WHEREFORE, Plaintiff requests this Court grant injunctive and declaratory relief in the form requested in the Prayer for Relief below, and further grant nominal, compensatory and punitive damages, in addition costs, attorneys' fees and all such other relief this Honorable Court deems just and equitable.

## THIRD CAUSE OF ACTION

### Violation of Article 1, Section 4 of the California Constitution

(Against All Defendants)

114.    Plaintiff incorporates by reference each and every allegation contained in

22

the foregoing paragraphs as though fully set forth herein.

115.   Article I, Section 4 of the California Constitution provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

116.   By their actions described above, including by removing Plaintiff's *hijab* and by prohibiting Plaintiff from covering her head with her *hijab* subsequent to searching that article of clothing and underneath it, Defendants denied Plaintiff the right to the free exercise of religion and to the free exercise of her religion without discrimination, as guaranteed by Article I, Section 4 of the California Constitution.

117.   As a result of Defendants' conduct, Plaintiff was humiliated.  Defendants inflicted a degrading indignity Ms. Mubarak will remember for the rest of her life.

118.   WHEREFORE, Plaintiff requests this Court grant injunctive and declaratory relief in the form requested in the Prayer for Relief below, and further grant nominal, compensatory and punitive damages, in addition costs, attorneys' fees and all such other relief this Honorable Court deems just and equitable.

## FOURTH CAUSE OF ACTION

### Violation of California's Tom Bane Act, Civil Code § 52.1

(Against All Defendants)

119.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

120.   California's Tom Bane Act, California Civil Code § 52.1, provides a civil action for damages to a person whose enjoyment of any rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, was interfered with by a person who, whether or not acting under color of state law, interferes with those rights by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a), (b).  Under said Act, any individual may prosecute in her own name and on her own behalf a civil action for damages, injunctive relief, civil penalties and attorneys' fees.

121.   Claims under this Act may be raised against public officials, including police officers. *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113.  This is true even in cases where a police officer had probable cause to make an arrest.  *Id.*  The Tom Bane Act does not require any showing of actual intent to discriminate.

122.   By preventing Plaintiff from wearing her religious headscarf in a public building during a public hearing, Defendants Harmon and LAPD Officers #1-4interfered with her right to free exercise of religion under the United States and California Constitutions.  By forcing Plaintiff to appear in public without an article of clothing her faith requires, Defendants prevented Plaintiff from the free exercise of her religion.

123.   The above actions were committed after Defendants Harmon and LAPD Officers #1-4violently and physically grabbed and pushed Plaintiff numerous times in a threatening and intimidating manner.  Thereafter, Plaintiff was unlawfully and unreasonably seized and searched.  Her *hijab* was removed without her consent and it was not immediately replaced, despite her pleas and explanation regarding its religious significance.

124.   These actions interfered with Plaintiff's rights and ultimately prevented her from exercising her right to free speech by speaking at the public hearing.  Defendants used physical force to shove Plaintiff out of their way and acted in concert to intimidate and threaten Plaintiff's physical security, in violation of Plaintiff's federal and state rights to the free exercise of her religion and to be free from warrantless searches and seizures.  These rights are guaranteed to Plaintiff by the First and Fourth Amendments of the United States Constitution and by Article I, Section 4 of the Constitution of the State of California.

125.   Defendants caused the Plaintiff to be deprived of these rights in violation of California's Tom Bane Act, which caused Plaintiff to suffer severe emotional and mental distress, anguish, suffering, pain, and humiliation.

126.   WHEREFORE, Plaintiff requests this Court grant injunctive and

declaratory relief in the form requested in the Prayer for Relief below, and further grant nominal, compensatory and punitive damages, in addition costs, attorneys' fees and all such other relief this Honorable Court deems just and equitable.

## FIFTH CAUSE OF ACTION

**Violation of California's Ralph Civil Rights Act, California Civil Code §§ 51.7**

(Against All Defendants)

127.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

128.   California's Ralph Civil Rights Act, California Civil Code §§ 51.7, 52(b), provides a civil action for damages.  It provides that all individuals within the jurisdiction of the state of California have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property on account of protected characteristics such as religion. The Act provides civil remedies including actual damages, punitive damages, civil penalties, and attorney's fees. *See* Cal. Civ. Code §§ 51.7, 52(b).

129.   Defendant battered, assaulted, and threatened Plaintiff in violation of California's Ralph Act by using illegal physical force against Plaintiff, placing her in imminent apprehension of harmful or offensive contact, and causing Plaintiff to receive unconsented, harmful or offensive physical contact by the Defendants.

130.   Defendants violently and physically pushed Plaintiff numerous times in a threatening and intimidating manner.  Thereafter, Plaintiff was unlawfully and unreasonably seized and searched.  Her *hijab* was torn off without her consent and it was not immediately replaced, despite her pleas and explanation to Defendants regarding its religious significance.  Plaintiff was forced to remain without an article of clothing her faith requires her to wear without reason and not in furtherance of any law enforcement interest.

131.   Defendants caused Plaintiff to be exposed to violence, or intimidation by

25

threat of violence, committed against her person and in violation of her right to free exercise of religion.

132.   This conduct violated California's Ralph Civil Rights Act, causing Plaintiff severe emotional and mental distress, anguish, suffering, pain, and humiliation.

133.   WHEREFORE, Plaintiff requests this Court grant injunctive and declaratory relief in the form requested in the Prayer for Relief below, and further grant nominal, compensatory and punitive damages, in addition costs, attorneys' fees and all such other relief this Honorable Court deems just and equitable.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that the Court enter a judgment, including, but not limited to:

1.   A declaratory judgement that:

    a.   The policies, practices, and customs of Defendants City of Los Angeles and Los Angeles Police Department Chief Moore that require or permit LAPD officers to remove religious head-coverings or headwear worn as part of a religious practice by arrestees, detainees, and/or incarcerees during a search of their person violate the First and Fourth Amendments to the Constitution of the United States, 42 U.S.C. §1983, and Article I §4 of the California Constitution; and

    b.   The actions of Defendants Corey Harmon and LAPD Officers #1-4 in removing Ms. Mubarak's hijab during a search of her person violated her rights under the First and Fourth Amendments to the

Constitution of the United States, 42 U.S.C. §1983, and Article I §4 of the California Constitution.

2. An injunction requiring the following:

    a. Defendants City of Los Angeles and Los Angeles Police Department to adopt policies that prohibit the removal of religious head-coverings or headwear worn as part of a religious practice by arrestees, detainees, and incarcerees. If such headwear must be removed, Defendants shall adopt policies to ensure the removal occurs in a private room or screened area by a same gendered officer or official and that no other gendered individuals are present.

    b. Defendants City of Los Angeles and Los Angeles Police Department to adopt policies to ensure that less intrusive search methods are utilized that do not require the removal of religious head-coverings or headwear worn as part of a religious practice by arrestees, detainees, and incarcerees; and

    c. Defendants City of Los Angeles and Los Angeles Police Department to train City of Los Angeles officials and police officers regarding the treatment and accommodation of religious head-coverings for all arrestees, detainees, and incarcerees.

3. Issue judgement in Plaintiff's favor on all causes of action alleged herein;

4.  An award of compensatory and punitive damages under 42 U.S.C. §1983, California Civil Code § 52.1, California Civil Code § 51.7, and California Civil Code § 52;

5.  An award of civil penalties under California Civil Code § 52.1, California Civil Code § 51.7, and California Civil Code § 52;

6.  Nominal damages;

7.  An award of attorneys' fees, costs and expenses predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983, and by California Civil Code § 52.1, which authorizes the award of attorneys' fees and costs to prevailing parties; and,

8.  Such additional and further relief to which Plaintiff is entitled or as this Honorable Court deems just and proper.

DATED:  September 17, 2020

COUNCIL ON AMERICA-ISLAMIC RELATIONS-CA (CAIR-CA)

By:    /s/ Dina Chehata
DINA CHEHATA, ESQ. (CA # 295596)
dchehata@cair.com
AMR SHABAIK, ESQ. (CA # 288109)
ashabaik@cair.com
Attorneys for Plaintiff,
NUSAIBA MUBARAK

28

**CAIR NATIONAL LEGAL DEFENSE FUND**

By:     */s/ Lena F. Masri*

LENA F. MASRI, ESQ. (DC # 1000019) (*pro hac* forthcoming)
   lmasri@cair.com
GADEIR I. ABBAS, ESQ. (VA # 81161) (*pro hac* forthcoming) α
   gabbas@cair.com
Attorneys for Plaintiff,
NUSAIBA MUBARAK

## JURY DEMAND

Plaintiff Nusaiba Mubarak hereby demands trial by jury on all above-referenced causes of action so triable.

DATED:  September 17, 2020

**COUNCIL ON AMERICA-ISLAMIC RELATIONS-CA (CAIR-CA)**

By:     */s/ Dina Chehata*

DINA CHEHATA, ESQ. (CA # 295596)
   dchehata@cair.com
AMR SHABAIK, ESQ. (CA # 288109)
   ashabaik@cair.com
Attorneys for Plaintiff,
NUSAIBA MUBARAK

**CAIR NATIONAL LEGAL DEFENSE FUND**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:     */s/ Lena F. Masri*
LENA F. MASRI, ESQ. (DC # 1000019)
(*pro hac* forthcoming)
    lmasri@cair.com
GADEIR I. ABBAS, ESQ. (VA # 81161) (*p
hac* forthcoming) α
    gabbas@cair.com
Attorneys for Plaintiff,
NUSAIBA MUBARAK